AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
2/11/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: _____JB_____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
2/11/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DL___ DEPUTY

United States of America

v.

SHAWN STEWART,

Defendant.

Case No.   2:21-mj-00747-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of February 11, 2021, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(A) | Possession with Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/S/ MARLON CORONADO
Complainant's signature

Marlon Coronado, DEA Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 2/11/2021

Judge's signature

City and state: Los Angeles, California

Hon. Rozella A. Oliver, U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT**

I, Marlon Coronado being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Shawn STEWART ("STEWART") for a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. BACKGROUND OF TASK FORCE OFFICER MARLON CORONADO

3. I have been a Los Angeles Airport Police Department ("LAXPD") Officer since June 2004. I have been assigned to the DEA as a sworn Task Force Officer ("TFO") since July 2015. I am currently assigned to the DEA Los Angeles Field Division, Los Angeles International Airport Narcotics Task Force ("LAXNTF").

4. The LAXNTF is an inter-agency task force based at the Los Angeles International Airport ("LAX"). In addition to the DEA, the LAXNTF consists of the following agencies: the Los

Angeles World Airports Police Department, the Los Angeles Police Department, and the Los Angeles County Sheriff's Department. The LAXNTF also works closely with the United States Customs and Border Protection, the Transportation Security Administration ("TSA"), the Department of Homeland Security, and the Federal Bureau of Investigation.  All of the aforementioned agencies recognize the need for a coordinated law enforcement effort to target airport/airline internal criminal enterprises that use the aviation system to transport large amounts of illicit drugs throughout the United States, and throughout the world.

5.   Specifically, the LAXNTF is focused on investigating airport/airline internal conspiracies in which criminal enterprises recruit airport/airline employees to exploit their privileged airport access and knowledge of existing airport security procedures, as well as airline passengers smuggling drugs and drug proceeds through the airport.  Previous and current investigations have identified Transnational Criminal Organizations ("TCOs") that rely generally on drug trafficking as their primary source of revenue.  As such, TCOs require the use of various forms of transport in order to obtain and distribute large amounts of illicit drugs into and through the United States, and air travel provides a significant opportunity for them to do so.  Additionally, air travel provides an opportunity to smuggle and distribute other contraband, including drug proceeds.

6.   During my career, I have participated in a variety of drug investigations ranging from simple possession to complex

international conspiracies.  I have also participated in the execution of search warrants, conducted physical surveillances, reviewed video surveillance, spoken to confidential informants, interviewed suspects, and discussed drug investigations with other experienced drug investigators concerning the methods and practices utilized by drug traffickers.

     7.   From June 2014 through June 2015, I was assigned to Homeland Security Investigations ("HSI") as a TFO.  While assigned to HSI, I participated in several drug investigations, involving the unlawful importation, exportation, possession with intent to distribute, and distribution of controlled substances, as well as the related laundering of monetary instruments, and the conducting of monetary transactions involving the proceeds of specified unlawful activities.

     8.   Based on my training and experience, I am familiar with the methods of operation of narcotics traffickers, including the importation, exportation, distribution, transportation, and storage of controlled substances, as well as the collection of money proceeds of drug trafficking and methods of money laundering used to conceal the nature of the proceeds. I am also familiar with the methods of operation used by people who distribute controlled substances, including the distribution, storage and transportation of controlled substances, as well as the collection of proceeds of drug trafficking and methods of money laundering used to conceal the nature of the proceeds.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

9.  On February 11, 2021, Transportation Security Administration and LAX Police Department officers at Los Angeles International Airport ("LAX") found approximately 2.34 kilograms (including packaging) of a white powdery substance resembling fentanyl inside a suitcase.  The suitcase bore a baggage tag bearing the name of STEWART.  Law enforcement discovered that STEWART was scheduled to travel on American Airlines flight #2503 from Los Angeles, California, to Memphis, Tennessee, with a connection through Dallas, Texas.  STEWART's plane departed before law enforcement could reach him, and agents are prepared to arrest him after he lands in Memphis.  Initial testing of the white powdery substance was positive for fentanyl.

### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

10.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.   TSA Discovers Drugs in STEWART's Checked Suitcase**

11.  I know the following based on my review of a report by LAX Police Department Officer Christopher Renard related to incident number 21-02186, reported on February 11, 2021, and based on conversations with Officer Renard:

    a.   On February 11, 2020, at approximately 5:30 a.m., an Explosive Detection System alarm in a TSA luggage screening room alerted TSA Officer Jacob Moody to an anomaly inside a black, hard-sided roller bag.

4

b. Officer Moody removed the item which was a "Craz-Z-Art Softee Dough" box from inside roller bag. Officer Moody opened the box and discovered a vacuum-sealed bag containing an unknown white substance wrapped in playdough. Officer Moody contacted TSA Supervisor Jose Romero and advised him of his findings. TSA Supervisor Romero observed the bag and then contacted the TSA Coordination Center and requested a TSA Explosive Specialist to their location to check whether the unknown substance contained any trace of explosives.

c. TSA Explosive Specialist Jose Cruz Soto responded to the baggage room. TSA Explosive Specialist Soto observed a black roller bag with an American Airlines bag tag, reflecting flight AA #3401 under the name of STEWART, Shawn. The roller bag contained an unknown white mass inside of a vacuumed-sealed bag with playdough formed around the unknown mass. TSA Explosive Specialist Soto made a small cut into the outer plastic layer of the unknown mass and swabbed it for any trace of explosives. The swab returned negative for explosives. TSA then contacted LAXPD regarding their findings.

d. At approximately 5:40 A.M., LAXPD officers Santana and Renard arrived at the TSA luggage screening area. Officers Santana and Renard observed the bag laying open on a TSA workstation. Officers Santana and Renard observed a substance they believed to resemble cocaine or fentanyl in the vacuum-sealed package.

e. Officer Mendez-Chavez arrived on scene to take digital photographs. Officer Mendez-Chavez located three

additional vacuumed sealed packages containing a white powdery substance concealed within miscellaneous items of men's clothing in the bag.

        f.   Officers Santana and Renard also discovered another "Craz-Z-Art Softee Dough" pack containing sixteen multicolored plastic containers.  Nine of the sixteen plastic containers contained a white powdery substance resembling cocaine or fentanyl.  The "Craz-Z-Art Softee Dough" pack appeared to have been opened and resealed using a glue different from the original packaging glue.  In the bag was also a three pack of "Craz-Z-Art Softee Dough" plastic containers, which also contained a white powdery substance.

        g.   Officer Renard requested for LAXPD plain clothes units Edward Solis and Julio Perez to respond to departing gate 42B to detain STEWART.  Officers Solis and Perez where unable to make contact with STEWART because he had already boarded the aircraft.

        h.   The black roller bag bore an American Airlines luggage tag showing STEWART's name and American Airlines Flight Number 2503, which was a flight from LAX to Dallas.

        i.   LAXPD Officers Quan Ho, Victor Santana and Christopher Renard took custody of the substances in STEWART's bag and transported them to the DEA Narcotics Task Force Office where Task Force Officer Claudio Cruz and I took custody of the suspected narcotics.

    12.   At the Narcotics Task Force office, I tested the white powdery substance inside the four clear plastic wrapped packages

and twelve "Cra-Z-Art Softee Dough" plastic containers found in STEWART's roller bag using the TruNarc Raman spectrometer. The test confirmed that all packages contained fentanyl.

## V. CONCLUSION

13. For all the reasons described above, there is probable cause to believe that Shawn STEWART violated 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 11th day of
February, 2021.

*Rozella A. Oliver* (signature)

HONORABLE ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE